Please be seated and counsel can approach. Tell us who you have for the record. Good morning, Your Honor. Robert Carson on behalf of the Plaintiff Appellant Center of the America LLC. Okay. Josh, for benefits, Your Honor, I represent all of the individual defendants and I'll be offering argument on behalf of all of the defendants this morning. Okay. And how much time do you figure you want this morning? Well, Your Honor, we're asking for 20 minutes for our opening argument with 10 minutes for rebuttal if that would please the Court. Sure. I think 20 minutes, Your Honor, would be fine for us. Okay. All right. So the microphones are for recording that amplification if you want to keep your voice up for those in attendance and those of us with tinnitus. Okay. Thank you. May I proceed, Your Honor? Yes, you may. May it please the Court. Good morning, Your Honors. My name again is Robert Carson. I represent the Plaintiff Appellant Center of the America LLC. The trial court dismissed our complaint with prejudice under 2615 of the Code of Civil Procedure and denied our motion to vacate and for leave to amend, finding that Century failed to sufficiently plead demand excused. We submit the trial court was in error and did not properly apply sub-law in analyzing our claims and the claims as they were presented in the proper First Amendment complaint. In our view, the outcome of this appeal requires a two-step inquiry under the Aronson, Pugoskin, and Unicall trilogy of cases. Before we get to that issue, let's just take care of the first issue, which both sides discussed a little bit, and that is really what is not at issue. Judge Taylor did not decide this on refusing to allow you to file an amended complaint. What he did is he looked at the amended complaint and said it didn't satisfy the requirement, the high standard that's required under Delaware law. Is that correct? That's correct. He said that it was futile and he denied us leave to amend for that reason. For that reason, not for a reason that, you know, 615, you should get another chance and other arguments that were made in the briefs, but really he really did get into the merits of the complaint to determine whether the claim met the standard required under Delaware law. That's correct, Your Honor, and it's for that reason that we think the standard of review in this case really should be a de novo review as to whether the First Amendment complaint alleges sufficient facts to demonstrate the main excuse.  In these cases, Aronson, Provostin, and Unicole are Delaware Supreme Court opinions from 84 and 85, and they really provide the roadmap for analysis in this case. From the outset, the question is whether the board gives the presumption under the business judgment rule. That is, the presumption that they acted in good faith, with full information, and with the intent of acting in the best interest of the company and its shareholders. The threshold inquiry, then, is whether the allegations state in a particularized way that the Goodhart-Wilcox board took defensive measures in response to a perceived threat to corporate policy and effectiveness, touching on issues of control. Now, again, your position is not that it had anything to do with the board being interested or independent. Well, not in the sense that they were being paid under the table. All of them certainly are. There were three. One person resigned. But of the five-member, six-member board, two were interested, the father and the daughter, and the others were disinterested, independent. Our position, Your Honor, in the allegations and the complaint support and inference that they were all acting from an entrenchment motive, and I'll get to that in a moment. But there's still an entrenchment, but that's different than being independent. You're not saying there's two roads you can follow. Yes. I'm just trying to say you're following the second road. Entrenchment satisfies the second part. Exactly.  Yes. Thank you, Your Honor. So according to the Unicall line of cases, there's an omnipresent specter in a takeover situation that a board may be acting primarily in its own interest rather than those of the corporation and the shareholders. So if you establish that they're taking defensive measures in response to a perceived threat, then you go to the second inquiry, which is whether the complaint alleges in a particularized way that the board acted with the sole or primary motivation of entrenchment. In this case, when they decided to use company funds to buy out Mr. Eichner's shares and to take the other actions that we've alleged with respect to amending the bylaws, this shows that demand is excused and the enhanced examination is required if there's a reasonable inference of entrenchment that's shown by those facts. So the question is, lay out for us in your first amendment complaint the particularized facts that you say make the threshold showing so that this case, your complaint, should go forward. I've got it right here, Your Honor. First off, this was not a threat to control. I'm sorry. Rather, this was a threat to control. It wasn't a threat to the company. This wasn't like the Unicall case where you had a green-mail situation where there was a front-loaded offer with a back-end that amounted to a junk bond. So it's not a threat to the shareholders. It's a threat to control. They didn't have any obviously legitimate reason to want to protect the shareholders from Mr. Eichner's offer. Well, but they had done a study of the value of the shares prior to Eichner making his demand. And, in fact, Your Honor, the price that was offered by Eichner was a good price. It was a lot more than had been previously recommended by the Prairie Capital advisors, a range of $102 to $106. And it was at the high end of the Griffin group range that they had come up with. So, again, there's no reason that they needed to protect the shareholders from what was a good offer. It was a good price. This was a threat to control that they were responding to. Well, what facts do you allege that go to the question of control? Is that the price? What we're alleging is that it started with a board plan to gain control for the ESOP. And the original discussion was for the ESOP. The ESOP came from the corporation. That's right. That's right. The original plan was we want the employee stock option plan to buy the shares from major shareholders in order to gain a control position. This was discussed within the board, which raises the question, what's the board even doing talking about that, gaining control for one shareholder, the ESOP? As it turns out, the ESOP was not the buyer, but the company was. They used company funds for the purpose of gaining control for the ESOP. You might say, how can that be if ESOP wasn't the buyer? Well, the ESOP, the amount of shares that they owned stayed constant. The amount of shares outstanding was reduced. Consequently, the percentage ownership of the ESOP was increased to a majority position. So what they did is they used company funds for the purpose of gaining control for the ESOP. And it's actually in the minutes. The justification that they talked about in the minutes was there was an informational packet that was distributed by Mr. Flanagan. And this is in the sealed exhibits that were submitted in the supplemental record on appeal. In Mr. Flanagan's informational packet, they discussed option F, which was for the company to purchase Wagner shares. And it specifically mentioned strengthen the ESOP's control of the company. And it also listed prerogatives available to the board of directors and management by maintaining control, including electing directors and appointing management, determining compensation and purposes for management. That's for Mr. Flanagan and his daughter. All right. Well, what case or cases under Delaware law would support your contention that that's a valid challenge of the exercise of business judgment by the corporation? Well, Your Honor, we say it's actually the whole Unicole line of cases that we're evaluating. The Unicole, I mean, that's a general standard to apply. Yes, yes. Well, we're here in a specific case that you're stating. Are there any – Unicole is 1984-85. Yeah. We're a long time since then. There are many cases of this Unicole. Any case where the facts are similar to what you're saying here? Yes. Or is this a very unique situation? Yeah, we're citing the Strasburger case, which teaches that a board of directors breaches its fiduciary duty when it uses company funds to obtain or maintain control for one group of shareholders at the expense of another. The Strasburger talks about a limiting fiduciary principle where if a company repurchases its stock for the sole or primary purpose of maintaining the board of management in control, in such a case the purchase is deemed unlawful even if the purchase price is fair. It only makes sense. You can't use company funds to benefit one group of shareholders over another. Now, in addition to – So under Strasburg, you're saying that any time you – and you've alleged that the directors did this in order to assist the ESOP. Yes, right. So you're saying under Delaware law, any time that a board makes a decision to help benefit one group of shareholders over another, that satisfies a particular lay's test? Yes, and it shifts the burden to them. They now have the burden to show that they perceived a legally cognizable threat to the company and that they acted reasonably in response to that threat. They can't claim the benefit of a business judgment rule under circumstances that indicate that there's an entrenchment motive. Entrenchment motive can be inferred because of the defensive situation that the company's in, but we've learned in Povelstin and also in the Ryan B. Armstrong case that it's necessary to show particularized facts that support that inference, and we've given those facts in the proposed First Amendment complaint. Okay, you were going through the facts. Why don't you give us a few other things? Well, this offer from Mr. Eichner, you remember he said, you buy me out or I'll buy you out. This offer was a bona fide and legitimate offer from a solid buyer who had the resources and he had the industry experience. There's no indication anywhere that he planned to dismantle the company or couldn't operate it effectively. So again, they're not protecting the company, they're protecting their own positions. As I mentioned, the informational packet that was distributed at the meeting and the minutes from the August 23, 2011 meeting indicate that they were talking about control and acting to get control for the ESOP. Within that same document at page 032, this is GW2-031 and 32, it says it's the recommendation of management to use company funds to buy the Eichner shares. This was after outside counsel had informed the board that the management directors are conflicted. So here we are deferring to the management directors in making this decision. And everything you're stating is in your amended complaint. Yes, it is. We've alleged that the board was under the domination and control of Mr. Flanagan and the way that that meeting was conducted and all the events that led up to that support that conclusion. Recall, as I said, it was the board plan initially for the ESOP to be the buyer of these shares, but they ultimately shifted and had it be the corporation, but still the goal is the same, to gain control for the ESOP. And I want to emphasize, we're at the pleading stage here. The defendants want to argue the inferences to be taken from these board notes. All those inferences should be taken in favor of the plaintiff here. Sure. The Huron consulting case talks about a different standard would require particularized facts. Right. I mean, mere suspicion is not enough, correct? Weakly particularized facts. Well, and it can't be conclusory. So, I mean, the question is, the judge said that your facts weren't particularized. It's kind of broad what he, his conclusion was not very specific. All respect to the trial court here, he reached a conclusion based on the original complaint. The first amendment complaint, his comments in court indicated, at least to me, that he didn't give it a fair reading and didn't give us the benefit of a fair reading of the allegations in the first amendment complaint. It was substantially expanded and substantially more particularized. Particularly in regard to this idea that the ESOP gained control as a result of the purchase. That was laid out in detail in the first amendment complaint, but it wasn't honestly laid out in that kind of detail in the first, in the original complaint. So, ultimately, they paid a premium to gain control for the ESOP. And there's no question here that the board cannot properly use company funds to benefit one shareholder over others. So, when we're saying that these particularized facts show entrenchment motive and the board does not get the benefit of the business judgment rule, demand is excused. I already explained how the ESOP became the majority owner as a result of the transaction, and we talked about the Strasburger case. Judge Taylor, in the circuit court, looked at all this, and he said, what the plaintiff relies on, essentially, is innocuous conduct. And he expressed concern that it's a slippery slope. Does this mean that every time someone takes an offer, we have to go beyond the pleadings and engage in discovery to determine if the transaction is entirely fair? No, this isn't a slippery slope. There's no slippery slope here because there's a gatekeeping function. A plaintiff must plead facts showing entrenchment motive. And if you can't, you're out. And that's what happened in the Ryan case and in the Gaylord case before. These allegations shift the burden. Because of the facts that we've alleged that show entrenchment motive in the context of a threat to control, the burden shifts to the directors. And remember, we're at the pleading stage. The defendants are wrong when they say that Century must separately satisfy the two-pronged Aronson test because once the plaintiff shows entrenchment motive by particularized allegations, Aronson is satisfied. The arguments that they presented to this court that we've waived anything under Aronson, it doesn't make any sense because if you satisfy Unicall, you satisfy Aronson. They're one and the same thing. What about the fact that a board received independent advice from an independent attorney and an independent firm as to the price? Doesn't that show that that's good business judgment to have those available? Well, first off, as I said earlier about Strasburger and I think just applying common sense, if you're using company money to secure control for one shareholder, to benefit one shareholder over another, that's not proper regardless of whether the price is fair. The fairness of the price has nothing to do with it. But there's something else important to note about that meeting. The so-called independent directors said that while this price, they said that they thought that there was a greater long-term value or we might be able to get a better price from another buyer, which is why they chose not to sell or to accept Mr. Eichner's offer. Well, remember the price was within that range. Where's the reasonable investigation to show that somebody else is going to offer more money or that there's a greater long-term value for the company? Is that in the complaint? The facts, that's what happened at the meeting on the complaint. The inference is what I'm talking about now, that if you're claiming that there's a greater long-term value of the company, then you've got an obligation to conduct a reasonable investigation to support that. You can't just assume it. Okay. And you just made that inference based on your first amendment complaint. I thought from this where you said that the other side was making inferences as well. You were criticizing it. And the plaintiff is entitled to the benefit of inferences at a 2615 stage of the proceedings, Your Honor. I don't think the defendants are entitled to that benefit. So these are fact-specific inquiries into reasonableness. That's why the cases that we've cited say that a unicall situation is not well-suited to motion to dismiss treatment. It's necessarily highly contextual. That's in the Wells Fargo case. The Gaylord container case talks about the same concept. The proper course was to deny the motion to dismiss, permit the plaintiffs to pursue discovery, and give the defendants an opportunity to satisfy the enhanced scrutiny standard. It's a burden-shifting. Instead here, the trial court concluded, notwithstanding our allegations, the bill gives the benefit of the business judgment rule. We're going to presume they acted properly, and we're not going to give you any opportunity to take any discovery, and we're not going to go any further with this. And we submit that the dismissal with prejudice was in error. I talked about the standard of review with respect to leave to amend. Judge Taylor actually said, I don't think it was error to dismiss with prejudice because the court can only deal with what is before it. And in his opinion, he said there was no request for leave to amend. He didn't find that there's no set of facts upon which we could recover. He dismissed with prejudice because we didn't ask for leave to amend. He didn't say, I'm denying you leave to amend. He said, I'm denying you the opportunity to ask for leave to amend. Well, but again, at the hearing, I make a suggestion that goes all this goes to the wayside because he looked at the complaint itself. And I need to respond to it because so much of what the defendants have said in their response brief addressed this issue, and they say, we're too late, and we're barred, and one shot, and you're out, and so on. But he even said if he had to decide on that issue, he would have let you. No, he didn't give me any credence at all to that issue. What about count two? Count two states address the issue. Why should we let that go? As distinct from a derivative claim, there's no demand requirement. There's no demand-excuse analysis. Tetley's claimants' rights as shareholders of Goodhart-Wellcock's company have been damaged, the right to be told the truth, right to call meetings, right to raise business at meetings, other rights as shareholders that were negatively impacted as a result of the board's defensive measures, including their amendment of the bylaws. In Paragraph 186 and 187 of the proposed amendment complaint, the plaintiff identifies special injuries, suffered by centuries separate and apart from other shareholders, lost opportunity to participate in the transaction, to sell its shares at a control premium, deprivation of their rights to participate meaningfully as shareholders in corporate affairs. The direct and the derivative claims can be somewhat overlapping. The case authorities from Delaware have talked about that, that in these defensive measures cases oftentimes the exact line is difficult to discern. And we would submit we're at the pleading stage and we respectfully request that the trial court be reversed and the matter remanded with instructions. We're also asking for reassignment to a different judge, and that's because, as I indicated a moment ago, I don't think, we don't believe that Judge Taylor really gave a fair reading to the first amendment complaint. He had his mind made up after he read the original complaint. He said, as I see it, you're building on the same theory, and he didn't think that theory was enough. He didn't really go to the particularized facts that we included that were in addition to support that theory. I'm not sure how I end on time. If Your Honors have any other questions, I'd be happy to address them. I think we've hit the main points of my opening argument. Thank you. Thank you, Counsel. Thank you, Your Honor. May it please the Court. In 2011, the independent outside directors of Goodhart Wilcox voted unanimously to repurchase the shares of company stock owned by FedEx. Following the vote of the independent directors, the entire board voted the same way. The directors reached their decision only after studying the costs and benefits of repurchasing stock from large shareholders. Wasn't this an advantage to the ESOP where they purchased it, and the whole idea behind the purchase was to aid the ESOP and give it a bigger share of the company? No. That, Your Honor, was one of the advantages of doing the repurchase, one among others. Well, is that an advantage, a proper advantage under business judgment rule in a case like this where there aren't that many shareholders in this company? Right, Your Honor. The answer is yes. It is within the board's business judgment to think about what's best for all company shareholders. And what the record is clear, the allegations are clear that what the board considered was is strengthening, not gaining control. Counsel's switching the words as he talks about it, but when he quoted, he correctly quoted, to strengthen the ESOP's control. And what the allegations and the exhibits to the complaint show are that the board decided that it would be best for all shareholders, all remaining shareholders, if the ESOP had stronger control of the company. That is absolutely within the business judgment rule, Your Honor, if and only if the board thought that's what was best for the company. If they did it because they thought, aha, if the ESOP gets control, we get to keep our directorships. That's obviously not proper. That's their allegation? No, that's their assertion, Your Honor. They need to back that up with particularized allegations of fact. That's what counsel told you today, and that's the correct standard. That's the law? That's the law. There are no allegations of particularized fact that suggest that. It's just an assertion. And what kind of facts would you say would be appropriate? They do cite to different meetings and notes and minutes. That's right. All of which suggest that the three outside independent directors, and frankly all five directors, the two insiders also, consistently thought what is best for the company. And that at each step within their decision-making process, they both had outside help, which shows that they are actually concerned with reaching the right answer. And also that when they expressed their views about why their votes were the right vote, that what they expressed was, we think this is best long-term for the company. So Delaware law, though, Your Honor, has been clear about what allegations could suffice to establish entrenchment. And what the Delaware courts have suggested is, if the plaintiff can plead, for instance, that the directors were getting outsized salaries for their directorships, you know, if they meet six times a year and they get a million dollars for their time, something like that, that might suggest that they had a vested interest in keeping their directorship. Or the Delaware courts have suggested, you know, some allegation that this director or that director needed the job, right? This was their only source of income, and without it, they would have liquidity problems. Things like that. That might suffice to plead an entrenchment motive. Before you go all Delaware-on-us. I apologize, Your Honor. Let's talk Illinois. And let us, give us your best oral argument as to why we don't need to reach the merits of this based on the particular way that the complaint was dismissed and the motion to reconsider and finish up with examination of the Rooklick case. Yeah, I appreciate that, Your Honor, and I'll do that. I also want to harken back to Judge Hyman's questions. We'll go back to Delaware. No, no, to his questions on this issue to my colleague, which I think are, I want to make a little bit of a distinction. So let me start with this premise. Plaintiff does not contest that if the circuit court's decision to enter the dismissal with prejudice was within the court's discretion, that the motion to amend the complaint came too late. So that's the starting premise. If the with prejudice dismissal was within the court's discretion, everything else is done. And let me demonstrate why that's true. Section 2616C is very clear that once judgment is entered, the complaint may only be amended to conform the pleadings to the proofs. And this court's decisions implementing 2616 are equally clear, including the recent decisions in things like FHB Tectonics, Tom's Redemption, which say we enforce the statute as it's written. Once there is a judgment, it is improper to make a motion to amend the complaint to make allegations that you could have made originally. So that point is crystal clear. And by the way, just as an aside, a belt and suspenders, it is also impermissible, this court has held, to make a motion to say, look, Your Honor, just vacate the judgment. And once you vacate it, now we're into liberal pleading world again. This court held in Compton that that is also improper. And what it explained is the only way in a situation like this that a plaintiff can rightfully make a motion to amend is if the judgment was improperly entered to begin with. And that's roughly. That's roughly. That's what the court said there. That's right. So the question here is, was Judge Taylor correct to enter the dismissal with prejudice? So step one is, on that question, plaintiff does not argue that Judge Taylor's substantive decision was wrong. In other words, they don't allege that the original complaint was not deficient. That's now a sign. And they bring an amended complaint that has more allegations than they could cover, right? Actually, Your Honor, I think it has less allegations than I think Judge Taylor has two. But that's aside. That's coming back to Delaware. So staying on Illinois, then the question is, was Judge Taylor within his discretion to enter the dismissal with prejudice? And the answer, Your Honor, is, yeah, he was. This court has been clear that if a plaintiff does not ask for leave to replead, the circuit court does not abuse its discretion by dismissing with prejudice. As this court stated in Compton, quote, trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather material to show that the court erred in its ruling, end quote. That is precisely what occurred here, and counsel essentially admitted it. Plaintiff argues that a circuit court cannot dismiss with prejudice, essentially unless it first does its own independent investigation of what potential allegations the plaintiff could make but hasn't yet made and concludes that those unplaid but possible allegations also would not stay a claim. There is not a single decision of any court within this state that has ever held anything remotely like that. And there's a good reason for it. In most cases, the only way that a court can evaluate what facts can be pled is by looking at the facts that are actually pled. And there is no requirement, and there really can't be one, that this court would require trial courts to ask a plaintiff every time it's about to grant a motion to dismiss. Wait, Mr. Plaintiff, I'm allowed to grant this motion to dismiss, but I just want to know before I do, do you have any other allegations to make? A lot of judges do that, but there's no requirement. That's right, but there's no discretion to, right? And Judge Taylor was within his discretion to say, look, these facts occurred in 2011. You didn't file suit until 2016, five years later. During those five years, you had every opportunity to gather all the facts you wanted, and frankly, Plaintiff did. They even obtained internal company documents, which they attached to the complaint, and they took their best shot. And Judge Taylor was within his discretion to say, you took your best shot, right? I've evaluated it thoroughly. He clearly did. And frankly, your amended complaint does not make new allegations. It actually subtracts, or it attempts to subtract. But what you're saying is not really what happened, because what happened here is that they moved for reconsideration. And in the context of the reconsideration, the judge specifically says that in regards to deciding the issue of amendment, I would allow the amendment pleading to be filed. So the judge, and there are cases in Illinois that allow a judge in a motion to reconsider to change that ruling and allow for the amendment. But the fact is that the judge did decide that issue because he went to the merits of the claim. So that, Your Honor, is your question that I wanted to come back to if I can, because that's not exactly right. Let me offer a slight correction. Judge Taylor took it in two steps. Step one, he said, as to your argument that I got it wrong by entering a with prejudice dismissal, I don't think that's true. There was no request before me. And then he said, if I was going to look at your request to amend, not your request to reconsider, right? Compton says that they can't do that. If I was going to look at your request to amend, I would probably allow you to amend, but I don't need to get there. But on the question of whether his with prejudice dismissal was erroneous, he said it was not. And that's why I started where I started, which is once he's made that decision, that my with prejudice dismissal was not erroneous and I'm not going to revise it, everything else is done. He no longer has the power to consider the motion to amend the pleadings. And frankly, Your Honor, he also doesn't, he wouldn't have had discretion to take back that dismissal anyway. But it doesn't matter because he was clear that he wasn't. What he said was I got it right on the with prejudice dismissal, but I would consider your amended pleading nonetheless if I didn't find it futile. But with that first ruling, that he didn't get it wrong the first time, he no longer had authority to do that. And that's not, the standard of review there is not abuse of discretion. The standard of review there is de novo, meaning this court reviews that from the first principle. And the first principle is once he said I didn't get it wrong on the with prejudice dismissal, he no longer has authority to allow them to amend the complaint. So the rule in Illinois, in your interpretation, is that there's an unwritten rule that says that when a motion to dismiss is filed, if you don't ask for an amendment before the judge enters the order, the judge may or may not do it with prejudice, you don't know. So you're stuck. You have no option. Once the judge does it with prejudice, you're done. Well, two things. If the judge is correct to do that, and there are rules about when a judge can do that. So if the judge is correct, that's true. But also the second is, Your Honor, it's not an unwritten rule. Arguments that aren't presented to the court are waived. But that's not an argument. And asking to amend is not an argument. Well, why would you ask to amend when you say you asked him to dismiss, you have the burden, you think the complaint is fine. And they argue for the judge, this is a good complaint, there's no reason to dismiss it. The fact is, the judge disagreed. It happens every day in court. And Rule 106 says we want liberal amendments here. Somebody shouldn't be out just because of some procedural problem such as this where they have one shot and out. I think that's why the judge correctly then went to the merits of the amended complaint because I don't think he thought it was fair when he talked about the request to admit and the revision point. I hear you, Your Honor. But that's inconsistent with this Court's decisions in FHP Tectonics, in Tom's Redemption, in Compton. But in all those cases, if I'm not mistaken, you correct me if I'm wrong, there were amendments previously. That is not true. In some of those cases there were, in some there were not. But in none of those cases did the Court's analysis turn on the fact that it was the second or the fourth time. In none of them. In all of the cases, the question was, was judgment correctly entered? If judgment was correctly entered, if what the judge did was within his or her discretion, there is no amendment. There was no analysis of whether it was the first time, the second time, the fourth time. So respectfully, to reach your result, Your Honor, you have to overrule at least four decisions of this Court. And then, frankly, back to the question of why would the plaintiff have said anything about wanting to amend, because in our motion we asked for a dismissal with prejudice. So this was not news to the plaintiff. It's not unfair. We asked with our opening brief, dismiss this with prejudice. And like all arguments, if you don't respond to it, you have forfeited your ability to do so. But if you don't contest an argument, like they didn't contest the dismissal of the second count of their complaint either, you waived it or you forfeited it. Was the ambition, did the judge rule in court? I wasn't clear. Mm-hmm. When the with prejudice language, was that something that counsel wrote into the order assigned by the judge, or was that in the order that he had prepared himself? Judge Taylor prepared the order himself, Your Honor. If we, if I can proceed now back to Delaware. Some caution, Your Honor. You can go interstate. I want to make just two, I think, basic points on the merits. The first is under Aronson that we would prevail, and the second is under Unical that we would prevail. So essentially, although you've heard our view that Aronson is the proper standard and not Unical, it actually doesn't matter because the plaintiff's allegations are insufficient under either standard. But let me start with Aronson. And the first thing I want to raise, and counsel has conceded the point correctly, is that under Aronson, it's a heightened pleading standard. So a plaintiff's allegations must plead with particularity whatever they think is sufficient to establish that demand is excused. And this court has held, and here I'm consulting case, but that means the complaint must have allegations that are beyond that which is necessary to survive an ordinary challenge under Section 2615 or its equivalent. Second, under the part of Aronson that would be applicable here, demand is excused only if the plaintiff can plead that a majority of the directors voted to repurchase Eichner's stock solely or primarily out of a desire to entrench themselves as directors. So it's not the action taken that's evaluated. It's the motivation for the action. But plaintiff's allegations and their entire story before the court concern only the two directors who also hold management positions with the company. They are not a majority of the board. Three of the five directors are outside directors who hold no other position with the company. Unless plaintiff alleges with particularity that those three directors acted solely or primarily to entrench themselves, then plaintiff's allegations regarding the two inside directors are irrelevant. And you're saying that that's not in their First Amendment complaint? That's right, Your Honor, none. And further, as this court held in Spilyards, where entrenchment is alleged to be the sole or primary purpose for the director's actions, that allegation must be supported by, quote, detailed allegations of manipulation of corporate machinery, close quote. Spilyards also explained that just because the result is entrenchment does not mean that the plaintiff has pled that the sole or primary motivation was entrenchment. Only the latter question is important, not the former. And, Your Honor, Spilyards correctly implemented Delaware law. In the Pugastin decision, which my colleague has already discussed, the Delaware Supreme Court found that entrenchment was not properly pled, even where the plaintiff alleged that the board rejected an acquisition offer, same as here, that was at a premium price, same allegation as here, and the board, in that case, refused to even negotiate with the offeror, which is not alleged here. Pugastin held that those allegations were insufficient to allege with particularity that the director's sole or primary motivation was entrenchment. Spilyards and Pugastin govern here. Nothing in plaintiff's proposed amended complaint alleges anything different about the director's motivations than the original complaint did. And the original complaint's allegations were insufficient, for it did not allege any particularized facts that established that the outside directors voted to purchase Eichner shares in order to preserve their directorships. Rather, plaintiff alleges that the board's primary rationale for seeking to repurchase the stock was that doing so would enhance the value of all the remaining shareholder stock. That's in the complaint, Your Honor. Paragraph 27 of the complaint says it. It's also in the exhibits to the complaint, which are in the record, specifically Exhibit G at page 10. Plaintiff's reply brief, and their argument here today, seems to assume that an entrenchment motive is well pled any time a board alleges sorry, any time a plaintiff alleges a selective stock repurchase. But that's inconsistent with Delaware precedent. The Graubau case, the Kahn v. Roberts case, and the Ryan v. Gersahaney case, all Delaware Supreme Court decisions, and all were selective repurchase cases where, in all of those cases, the court found that an entrenchment motive was not present. So it's clear that a selective repurchase is not enough. And so is a decision to decline an acquisition offer in both Pagostin and Gantler, in both of those cases, which are both, again, Delaware Supreme Court cases. That was pled, and the Delaware Supreme Court said that's not enough for an entrenchment motive either. Thus, plaintiff has not pled with particularity any facts establishing that a majority of the board voted to buy Eichner stock in order to preserve their own positions. And for that reason, if the correct standard is Aronson, and we think it is, they haven't pled enough. The final point, Your Honors, is even if the court were to apply Unical rather than Aronson, that doesn't help plaintiff, because Unical applies only where a board's action is in response to an external threat. As Judge Taylor correctly held, plaintiff has not pled any facts with particularity establishing an external threat. The assertion that you heard from counsel today is the same assertion made in their briefs, which is, well, Eichner made an offer. And that's true. They have alleged Eichner made an offer, and Eichner did make an offer. But that's also true in Pagostin, and that's true in Gantler, both Delaware Supreme Court decisions. So, for instance, in Gantler, the allegations were that the company was operating in a depressed economy, similar to the allegation here, that the board received a takeover offer at a premium to market price, same as the allegation here. There, the board rejected the offer without even discussing it. Not alleged here. And then the board adopted a stock reclassification that made takeovers more difficult in the future. Also not alleged here. But even in that circumstance, the Delaware Supreme Court said Unical doesn't apply. It's not triggered because, quote, sorry, because there was no, the plaintiff did not allege, quote, any hostile takeover attempt or similar threatened action from which it could be reasonably inferred that the defendants acted defensively. Close quote. So even in that situation, with allegations far further than the allegations here, Unical didn't apply because there was no external threat. One more case and then I'll sit down. Ryan v. Gersahaney, where the substantive opinion is a Chancery Court decision from 2015 and then the Delaware Supreme Court affirmed adopting the reasoning of the Chancery Court. The board repurchased an unhappy shareholder stock at an allegedly inflated price. The board chairman was alleged to have specifically stated that it was, quote, that if they didn't repurchase the shareholder's stock, it was, quote, likely that the shareholder would make a stockholder proposal to elect its own representatives to the board. In other words, in plaintiff's view, a challenge to the board's longevity, not to the company itself. Even in that situation, with those allegations, the Chancery Court held, again affirmed by the Supreme Court, that the allegations were insufficient because, quote, plaintiff has not alleged that the director defendants were actually threatened with removal from their positions. So, Your Honor, Gantler and Ryan v. Gersahaney foreclosed definitively plaintiff's position that its allegations satisfy Unical, as Judge Taylor correctly held. And for that reason, it doesn't matter whether the court reviews this case under Aronson or Unical, the plaintiff's allegations are insufficient. Unless the court has any further questions, we would ask that the court affirm on either of the grounds that we present. Okay. Thank you. Thank you. So counsel makes the point that they make in their response brief, that it's not good enough to say entrenchment. You need to plead particularized facts that show entrenchment. And that's what we've done. We have particularized facts that show there's no legally cognizable threat, and an unreasonable response to that threat, and that leads to an influence of entrenchment. When you look at why they acted, and you can't come up with any explanation as to why they acted the way that they did, then you have to consider the omnipresent specter of entrenchment, which is found in the Delaware Supreme Court cases. There are really seven points, seven reasons. And I touched on them in my initial comments, but just to recap and emphasize, this is not a greenmail situation. This is a good price. There was no reasonable investigation to support their contention that they might be able to get a better price elsewhere. It was a solid buyer that was not intending to dismail the company. It wasn't a threat to the company or its shareholders in any sense. Most importantly, the minutes reflect by their own admission that this, that they were using company funds for the purpose of strengthening control, solidifying control for the ESOP. The so-called independent directors defer to the management directors. The minutes make that clear. And finally, in terms of whether it's a reasonable response, it's not reasonable to use company funds to benefit one group of shareholders to the expense of others. Just a word about the exhibits, because counsel says that our proffered First Amendment complaint staged less than our original complaint. And that's a theme they're trying to develop because we didn't attach those exhibits to the First Amendment complaint. We don't have to attach those exhibits to the First Amendment complaint. This is not a claim founded on a written instrument that requires that the written instrument be attached. We attached some of the minutes to our original complaint. We didn't attach them to our First Amendment complaint. Yet they want to parse through the content of those minutes in order to create inferences in their favor to support the arguments that they use to create business judgment. And they're not permitted to do that because those exhibits are not part of the First Amendment complaint. And as I said earlier, the real question here is, on de novo review, does the First Amendment complaint stage sufficient facts to establish entrenchment and shift the burden? And again, this inquiry is highly contextual. It requires an examination of the facts in total. So can they say, here's a case that involved a buyout of a shareholder and the court didn't shift the burden? In that case, yes, they can, but it's not the highly contextualized set of facts that are presented here where they're doing it for the purpose of gaining control of the company for the ESOP. What particularized facts did you plead that showed the motivation of the three outside directors to entrench themselves? I would submit, Your Honor, that it would be a rare case where one could find and plead what somebody's intent was. Rather, what you do is you submit the circumstances and the inference arises from those circumstances. And that's what comes from, again, the omnipresent specter. And what we've done is we've submitted evidence as to whether there was a legally cognizable threat and whether they made a reasonable response to that threat. And the answer is no, no, and no. There's no other explanation other than entrenchment motive. Furthermore, what they did is they deferred unreasonably to the admittedly conflicted directors. And I say admittedly. Their own outside counsel said these two are conflicted. But they still deferred to them, asked for their recommendation, asked for their advice as to what's the long-term prospects of the company and otherwise let them drive the process, including submitting the talking points options A through G that was presented at the August 23 meeting with the recommendation of management that you accept option F, which is use company funds to buy out Mr. Eichner in order to strengthen the ESA. Very briefly, I'm going to leave to amend an Illinois procedural question. There is a standard that has to be met for dismissal with prejudice, and that is that it has to be readily apparent that there's no set of facts upon which the plaintiff can recover. Judge Taylor did not make that finding here. And the Illinois graphics case says that that's the standard that applies whether or not there has been a request for leave to amend. So it's nonsense to say that you have to argue, you know, my plea shouldn't be dismissed, but yet if you do dismiss it, I'd like leave to amend. The plaintiffs are not required to be in that position hedging their bets in opposing a motion to dismiss. Furthermore, I would say it would be bad policy to require it. To say that the plaintiff needs to generate his amended complaint while he's still trying to determine what the court's view is of his existing complaint isn't in the interest of, certainly not in the interest of justice or judicial economy. In this case, Judge Taylor took it under advisement. He issued a written opinion, and in that written opinion, he explained why he thought the complaint was deficient. He said I'm dismissing with prejudice, and he footnoted there was no request to amend. I would suggest that that's inconsistent with Illinois practice in the circuit court of Cook County, certainly, and I believe that the policy in the state of Illinois, as you say, under 1106 of the Coastal Procedure, we're trying to do substantial justice here. Under the Pogostin case, which counsel's relying on, the entrenchment motive will shift the burden, and in the other cases that counselors rely on, Grobo and Kahn, there was no threat to control. Those cases are distinguishable enough facts. The whole context of this Unicole analysis depends on a threat to control. There was none in Kahn. There was none in Grobo. In terms of whether or not there was a hostile takeover attempt here, that's not really the standard. Counsel argued below, and he's arguing here, that because there was an offer from Mr. Eichner, and it's just an offer, it's not a threat, the Delaware cases make clear that it can be, the line itself acknowledges that any defensive measure that's taken in response to a takeover offer, whether or not hostile, can shift the burden if there's a showing of entrenchment motives. And Podolsky makes that point as well. Again, the question, when counsel talks about the exercise of business judgment in bringing consultants in to advise them, there's no reasonable investigation with respect to the conclusions that they reached. There's no advice from this outside advisor with respect to what the long-term value of the shares is likely to be, or whether there's going to be a market elsewhere. They just made that statement in the board meeting. That does not show an exercise of business judgment. Nor can it be used to support motivation in the context of a situation where we're in the pleading stage. They're trying to, once again, they're trying to argue inferences from the content of the minutes, and they're not entitled to the benefit of those inferences. Just one moment. I'm just checking my notes here. Going back to the question about leave to amend, the cases that they're relying on, FHP, Thompson, those cases, they're all situations where there's something in the contract, in the insurance policy, in the facts that make it clear that there's no set of facts upon which recovery can be made. And that's why it was appropriate to dismiss the case with prejudice, because there was no set of facts upon which a recovery could be made. The problem I have with your argument, quite frankly, is that under Delaware law, they're asking for specificity. They're asking for a threshold showing. They're asking that the particular facts that they claim to have some merit, they talk about the cases, the Supreme Court talks about merit, and that there's a reasonable factual basis to proceed, all of which, to me, is different than talking about inferences and so forth. Delaware is a, it's very hard. These cases are very difficult, as you know, in Delaware. I mean, the Delaware courts, with regard to these types of cases, there's legions of cases, and most of them, many of them have been dismissed. And they're all related to individualized facts. But it seems that, from what I hear you saying over and over again, that we have to take those facts and go someplace else with them,  you have to pretty much make a case there. We want to know that this particular case has legs. Not that it might have legs. Not that you'll find out it has legs. You've got to have legs. That's what I'm. . . Your Honor, I can only say that we've given you those facts in our first amendment complaint. And I'm not saying that it's all inference, but what I'm saying is that there are particularized facts that give rise to the inference. And the particularized facts, I've recited it already, it's all there in the first amendment. We've alleged that they acted to perpetuate themselves in office. That's what we've alleged. Now, you could say that's a conclusion. It is. What are the facts that support it? The facts that support it are there was no other, there was no legally cognizable threat, because it's not a green-mail situation. There are seven points. Yeah, there are seven points. And that's our support for it. And we believe that it well establishes entrenchment motive, and especially in the context of a situation where they're using, admittedly using company funds to benefit one shareholder over the others, which is not proper. Counsel, I just have a question about the whole motion to dismiss. The colleague has said that they filed a motion to dismiss with prejudice. You got a copy of that. Now, you filed your complaint, your original complaint. You had a copy of their motion to dismiss with prejudice. It clicks off some items. At that point, the only thing the judge has in front of them doesn't have your amended complaint, no motion to amend the complaint, no proposed amended complaint, nothing that's going to fix your first complaint, your original complaint. He has your original complaint and their motion to dismiss with prejudice. And I think you're asking us to say the trial court then has some obligation to allow you to amend your complaint after he dismisses the case with prejudice, because he should have known that you could fix it. And you had an opportunity the whole time this motion to dismiss with prejudice was pending to run right in and say, wait a minute, wait a minute, we want to amend our complaint, which any judge, I think, would have granted you. So why are you complaining now about that? Well, Your Honor, there's a couple points I'd make in response. First off, when counsel says in their briefs that we never responded to the arguments concerning dismissal with prejudice, that's not what happened. The motion itself says with prejudice at the end. The words do appear on that page. There's no justification for it, no argument made in support of it, nothing in the brief in support or any of the briefing to the court made an argument or justified a dismissal with prejudice. It never came up in the oral argument. Did he file a motion to dismiss to get you to file an amended complaint? Did he ask for that relief? I'm sorry, Your Honor? You're trying to dismiss, probably a bad choice of words, but you're trying to suggest that the fact that he's asking your opponent, your colleague is asking for a dismissal with prejudice doesn't mean anything. I'm trying to ask you whether or not, you know, you're suggesting that he should have, in the motion to dismiss, suggest that you would be allowed to amend the complaint. No, I'm not suggesting that, Your Honor. I'm not suggesting that it doesn't mean anything either. What I'm doing is when they say we didn't respond to the argument that dismissal should be with prejudice, there was no such argument. They didn't make any such argument. They had the words with prejudice in their periphery. And there was no suggestion by you during the process about amending? You thought you had enough facts and or inferences in your complaint, right? Correct. And, Your Honor, after about 35 years of practice in this jurisdiction, I expected that in the event the motion was granted that we'd have an opportunity to amend if we chose to do so because that's the usual practice. Okay. I'm sorry, would I address Your Honor's questions? Okay. You can wrap up if you want. I guess in conclusion, I'd like to remind the Court that we're at the pleading stage here. And the plaintiffs have made a case to establish that they took defensive measures in response to a threat to control and that they acted out of an entrenchment motive. It all comes back to the business judgment rule. Can, on these allegations, it be reasonably expected that this Board of Directors can fairly bring to bear their business judgment in response to a demand to file suit? Or rather, because of what's been alleged against them, should the burden shift for them to justify the action that they've taken rather than allow them to have a presumption in their favor that they acted with proper business judgment? And if the Court has no further questions, that's all the rebuttal that I have. Thank you. Okay. I'd like to thank the parties for the briefs and arguments, all very, very well done. We will take the matter under advisement and issue an opinion forthwith. We're adjourned.